**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CAROL SCHULTE, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-14-419 |
| BOSTON MUTUAL LIFE | * | |
| INSURANCE COMPANY, | | |
| | * | |
| Defendant | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM</u>

Carol Schulte ("Plaintiff") brought this *pro se* action against Boston Mutual Life Insurance Company ("Boston Mutual" or "Defendant") and others, asserting a range of constitutional, statutory, and common law claims stemming from the cancellation of her long-term disability ("LTD") benefits. In a September 30, 2014, Order (ECF No. 24), the Court terminated all defendants except Boston Mutual, and it narrowed Plaintiff's action to a single claim arising under section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA") of 1974, as amended, 29 U.S.C. § 1132(a)(1)(B).

Now pending before the Court are cross-motions for summary judgment filed by Defendant (ECF No. 42) and Plaintiff (ECF No. 54).[1] The issues have been briefed (ECF Nos. 42–1, 54, 54–1, 59 & 67), and no hearing is required, Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Defendant's Motion will be GRANTED, and Plaintiff's Motion will be DENIED.

---

[1] Also pending are Plaintiff's "Objection to Orders" (ECF No. 57) and Plaintiff's "Motion: the Amended 'Plaintiff's Reply and Countermotion for Summary Judgment'" (ECF No. 67). The Court addresses each of these filings below.

## I. Overview

### A. Factual Background[2]

Plaintiff was employed as a senior management analyst at The Johns Hopkins Hospital beginning in August 1985. (BostonMut_Schulte_01335.[3]) As part of her compensation package, Plaintiff was entitled to LTD insurance provided by Defendant (Policy No. G-50353) ("the LTD Policy" or "the Policy"). (ECF No. 42–3 at 2.) Plaintiff had suffered spinal injuries in the 1980s; Plaintiff's injuries and her related symptoms progressively worsened,[4] ultimately leading to her departure from Johns Hopkins in October 1993. (BostonMut_Schulte_01336.) Plaintiff applied for LTD benefits; Defendant approved her claim in May 1994. (*Id.* at 01338.)

The LTD Policy, an employee welfare benefits plan governed by ERISA, provides a total disability benefit of sixty percent of the claimant's basic monthly earnings up to a maximum monthly benefit of $5000. (ECF No. 42–3 at 7.) For managerial employees (such as Plaintiff), the LTD Policy defines "total disability" as the inability, during an elimination period and for sixty months thereafter, to "perform each and every of the material and substantial duties of [one's] occupation on a full-time basis because of a disability . . . caused by injury or sickness . . . that started while insured under this coverage." (*Id.* at 12.) After the sixty-month period, one remains totally disabled if one is "unable to perform with reasonable continuity each and every

---

[2] When considering a motion for summary judgment, the facts and the inferences to be drawn therefrom are taken in the light most favorable to the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). Because both parties here have moved for summary judgment, the Court must consider each motion separately on its own merits "to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir.1997)). Having studied the cross-motions, the Court is of the opinion that Defendant is entitled to judgment as a matter of law. Accordingly, the facts and inferences to be drawn therefrom are taken in the light most favorable to the party opposing Defendant's Motion—Plaintiff.
[3] Throughout this Memorandum, the Court cites the administrative record, which Defendant submitted as a hard-copy lengthy exhibit (Exhibit 1-B), using the record's Bates labeling system.
[4] Plaintiff suffered a series of mishaps during her youth and early adult years, including two car accidents (one in 1980 and one in 1983). (BostonMut_Schulte_00666.) In 1982 and 1983, Plaintiff underwent a cervical fusion and related procedures; in 1985, Plaintiff was involved in a third car accident, which aggravated her preexisting neck and spinal injuries. (*Id.*) Plaintiff underwent additional surgeries from 1988 through 1993. (*Id.* at 00667.) However, the extent of Plaintiff's treatment regimen (surgical or otherwise) over the past two decades is unclear.

of the material and substantial duties of [one's] own or any other occupation for which [one] is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity." (*Id.*) In order to qualify for these continuing benefits, the claimant must supply "[p]roof of continued disability and regular attendance of a physician" within thirty days of any request by Defendant. (*Id.* at 31.) Such proof must specifically cover (1) the *date* disability started, (2) the *cause* of disability, and (3) the *degree* of disability. (*Id.*)[5] The LTD Policy also includes a limitations provision for legal proceedings: a claimant cannot start any legal action until sixty days after proof has been given, and she must bring any such action within three years "after the time proof of claim is required." (*Id.*)

Plaintiff has a long history of noncooperation with Defendant's administrative requirements. In 2001, for instance, she telephoned Defendant to demand that it "stop sending [her] all these letters and garbage." (BostonMut_Schulte_00168.) In 2004, she informed Defendant's agent that she believed she was only required to provide annual proof of her disability, and she accused the agent of harassing her. (*Id.* at 00014.) Later that year, Plaintiff's claim was temporarily closed due to her failure to respond to numerous requests for proof. (*Id.* at 00199, 00209.) Plaintiff's behavior in 2004 was hardly anomalous; in fact, from August 1996 through August 2009, Plaintiff refused to complete Defendant's standard release forms or to supply a detailed attending physician statement. Instead, Plaintiff repeatedly submitted a short blurb, allegedly signed by her treating physician, which rattled off a series of ailments and declared that she was "totally disabled" and "unable to work for compensation due to many medical reasons."[6]

---

[5] Furthermore, under the terms of the LTD Policy, Defendant may—as often as reasonably necessary—require a claimant to undergo a physical examination by a physician of Defendant's choice. (ECF No. 42–3 at 31.)

[6] *See, e.g.*, BostonMut_Schulte_174, 404, 918, 1269, 1272-73, 1275, 1278, 1321-22, 1324 & 1332. These nearly identical documents included a separate statement through which Plaintiff forbade Defendant from obtaining any

In a September 25, 2009, letter, Defendant asked Plaintiff to complete a medical authorization form, income questionnaire, and physician's statement. (*Id.* at 00958.) Receiving no response, Defendant sent follow-up letters on November 13, 2009 (*id.* at 00957), and December 14, 2009 (*id.* at 00955). In the December letter, Defendant specifically cited the LTD Policy provision requiring proof of continued disability, and it warned Plaintiff that she would not receive her February 2010 payment unless she completed the requisite forms. (*Id.* at 00956.) In spite of that warning, Plaintiff continued to ignore Defendant's requests.

In a February 19, 2010, letter, Defendant advised Plaintiff that it had independently learned that her treating physician, Dr. Michael K. Ro, M.D., had retired the previous September; Defendant released Plaintiff's February benefit check in "a show of good faith," and it asked Plaintiff to provide a signed authorization and a list of current treatment providers within thirty days. (*Id.* at 00940.) Defendant again extended the deadline in a March 17, 2010, letter. (*Id.* at 00936-37.) Plaintiff continued to resist Defendant's requests for proof of disability, and Defendant consequently closed her claim on April 19, 2010—but even thereafter, it urged her to provide the requested proof and assured her that it would reopen her claim if such proof showed she remained eligible for benefits. (*Id.* at 00895.)[7]

In October 2010, Plaintiff faxed Defendant an assortment of blurry records and statements drafted by Plaintiff, ostensibly in support of her claim for benefits. (*Id.* at 00832-46.)[8]

---

information not provided directly by her. It appears that Plaintiff drafted these documents (inclusive of her physician's blurb) herself: they are not printed on letterhead, and they generally include her return address.

[7] Defendant advised Plaintiff that she could sign a release form or gather and submit the necessary records herself; Defendant further explained that it did not matter "whether suitable proof [came] from [Plaintiff's] doctor or an independent physician." (*Id.* at 00895.)

[8] At approximately the same time, Plaintiff mailed a set of medical records and a disk to Paul Petry, then-president of Boston Mutual. Plaintiff indicated that the information was "personal and confidential" and that "no one else should read" it. (*Id.* at 00789.) Because of this disclaimer, Petry did not place the additional materials into Plaintiff's administrative record; instead, he returned them along with a letter dated December 6, 2010. (*Id.*)

In a January 3, 2011, telephone conversation with Annette Jung, an appeals specialist at Disability Management Services, Inc. ("DMS") (Defendant's third-party appeals administrator), Plaintiff indicated that she

Defendant interpreted this transmission as an appeal of the prior claim closure, and it forwarded Plaintiff's case to its third-party appeals administrator, Disability Management Services, Inc. ("DMS"). (*Id.* at 00829.)[9] DMS asked Plaintiff to sign an authorization and to provide a list of treating physicians—but as during the initial review, Plaintiff refused. (*Id.* at 00825.) DMS thereafter scheduled Plaintiff for an independent medical evaluation with Dr. Mark Rosenthal, M.D., a board-certified orthopedic surgeon. At the appointment, Plaintiff initially refused to complete a medical history questionnaire; she then told Dr. Rosenthal that he was not permitted to view a set of radiographs she had brought with her. (*Id.* at 00746.) Due to Plaintiff's uncooperative behavior, Dr. Rosenthal ended the evaluation—at which point Plaintiff "jumped off the exam table and chased [him] down the hall yelling and screaming at [him]." (*Id.*)[10]

Based on his review of the limited records that Plaintiff had provided, and taking into account his observations at the appointment, Dr. Rosenthal concluded that Plaintiff "is certainly capable of functioning in a sedentary . . . work environment"; that she is able to "ambulate without difficulty and able to sit and arise from a chair once again without difficulty"; and that, while she did have some instabilities in the cervical and lumbar spines in the past, as a result of her prior surgeries "she has stable fusion of both the cervical and lumber region and nerve testing

---

wished to supplement the record with the contents of a disk, presumably the same disk that she had previously mailed to Petry. (*Id.* at 00738.) On January 6, Jung mailed Plaintiff a postage-paid envelope that she could use to submit the disk (*id.*); Jung sent Plaintiff a reminder on February 3 (*id.* at 00712) and an additional postage-paid envelope on March 3 (*id.* at 00706), but DMS never received the disk (*id.* at 00699).

[9] In a show of further good faith, Defendant released the benefits Plaintiff would have accrued between March and October 2010; Defendant also pledged to make subsequent monthly payments, provided that Plaintiff cooperated with the appellate review process. (*Id.* at 00832.) Thereafter, Defendant maintained payments through March 12, 2011, even though "it was determined that [Plaintiff] continued to be uncooperative in the evaluation of her appeal." (*Id.* at 00678.)

[10] In her reply in support of her cross-motion, Plaintiff presents a very different picture of her appointment with Dr. Rosenthal, alleging that he "refused to do a history and physical or medical examination" and "refused [to] look at the cervical/lumbar MRI disk Plaintiff specifically made for the case." (ECF No. 67 at 4.) It strains credulity to suppose that a board-certified, independent medical examiner would refuse to review documents or examine a patient at a scheduled appointment. More importantly, Plaintiff proffers neither an affidavit nor a declaration nor any other proof of her characterization, while the administrative record contains contemporaneous letters by Dr. Rosenthal describing the events that transpired at the appointment.

only shows a mild L5 nerve root problem." (*Id.*)  Bottom line:  "[f]rom an orthopaedic perspective, there is no reason why [Plaintiff] could not return to work in at least a sedentary position." (*Id.*)

In a letter dated March 17, 2011, DMS upheld the prior termination of Plaintiff's LTD claim, concluding that there was "insufficient information to support a condition or conditions that rise to a level of impairment to cause [Plaintiff] to be unable to engage in the material and substantial duties of [her] own or any other occupation" for which she was reasonably fitted.  (*Id.* at 00699.)

### *B. Procedural History*

Plaintiff filed the present action on February 11, 2014, naming as defendants Boston Mutual; Paul Petry and Guy DeAngelis, both employees of Boston Mutual; Funk & Bolton, P.A., a law firm retained by Boston Mutual; and Bryan Bolton and Michael Cunningham, attorneys at Funk & Bolton.  (ECF No. 1.)  Plaintiff alleged a host of constitutional, statutory, and common law violations relating to the cancellation of her LTD benefits; she demanded $100,000,000 and a jury trial.  (*Id.* at 5.)  In a September 8, 2014, Order, the Court terminated all defendants except for Boston Mutual, and it narrowed Plaintiff's action to a single claim for benefits under section 502(a)(1)(B) of ERISA.  (ECF No. 24.)

On June 15, 2015, Defendant Boston Mutual filed a Motion for Summary Judgment on Plaintiff's sole remaining claim.  (ECF No. 42.)  Plaintiff moved to strike Defendant's Motion (ECF No. 52), but the Court denied her request on August 5, 2015 (ECF No. 53).  Thereafter, Plaintiff filed a "Reply and Counter Motion for Summary Judgment" (ECF No. 54);[11] she also filed an "Objection" to the Court's August 5 Order (ECF No. 57).  Defendant filed a response in

---

[11] For clarity, the Court will refer to Plaintiff's "Reply and Counter Motion" throughout this Memorandum as a cross-motion for summary judgment.

opposition to Plaintiff's cross-motion on September 3, 2015 (ECF No. 59). At that point, the only outstanding brief, pursuant to Local Rule 105.2(a) (D. Md. 2014) and the Court's scheduling instructions (ECF Nos. 53, 66), was Plaintiff's reply in support of her cross-motion. Nevertheless, on October 5, 2015, Plaintiff filed what purports to be an amended summary judgment motion as well as a reply to Defendant's opposition brief. (ECF No. 67.)[12] Defendant challenged the procedural impropriety of Plaintiff's October 5 filing (ECF No. 70), and Plaintiff replied (ECF No. 73).

To summarize: pending before the Court are the summary judgment motion filed by Defendant (ECF No. 42) and the "Objection," cross-motion, and purported amendment to the cross-motion filed by Plaintiff (ECF Nos. 54, 57 & 67). Each of these motions is ripe for decision.

## II. Standard for Summary Judgment

When faced with cross-motions for summary judgment, the Court must consider each motion separately on its own merits. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The Court will grant summary judgment to a party who demonstrates that (1) there is no genuine dispute as to any material fact and (2) that party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). No genuine issue of material fact exists if the opposing party fails to make a sufficient showing on an essential element of her case as to which she would have the burden of proof. *See Celotex*, 477 U.S. at 322-23. The "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). As the Fourth Circuit has

---

[12] Plaintiff captioned this anomalous document as follows, verbatim: "Plaintiff's Motion: the Amended 'Plaintiff's Reply and Countermotion for Summary Judgment' and this is also Plaintiff's Motion for summary Judgment. Rule 56, and This is also the document due on 10/05/2015."

recognized, district courts have an "affirmative obligation . . . to prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323-24).

The facts themselves, and the inferences to be drawn therefrom, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). Even so, the opponent may not rest upon the mere allegations or denials of her pleading but must instead, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits must be made on personal knowledge with such facts as would be admissible in evidence and must affirmatively show the competence of the affiant to testify to the matters stated therein. Fed. R. Civ. P. 56(c)(4).

In this Circuit, a district court may not enter summary judgment against a *pro se* plaintiff without first providing her with "fair notice of the requirements of the summary judgment rule" in a form that is "sufficiently understandable" to a person in her circumstances. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968)). On June 16, 2015, the Court furnished Plaintiff with notice that (1) Defendant had filed a motion for summary judgment; (2) judgment could be entered against Plaintiff if Defendant's motion were granted; and (3) Plaintiff had a right to file a response, supported by affidavits and other evidence. (ECF No. 43.) Having received proper *Roseboro* notice, Plaintiff will be held to the normal standards of summary judgment, notwithstanding her *pro se* status. *See Costley v. Shinseki*, Civ. No. JKB-10-3122, 2011 WL 1743244, at *6 (D. Md. May 6, 2011) (citing *Larken v. Perkins*, 22 F. App'x 114, 115 n.* (4th Cir. 2001) (per curiam)).

## III. Analysis

### A. Plaintiff's "Objection to Orders" (ECF No. 57)

In its Order of August 5, 2015 (ECF No. 53), the Court denied Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment (ECF No. 52). In her "Objection" to the Court's August 5 Order, Plaintiff rehashes several arguments she raised in her Motion to Strike, which the Court previously deemed meritless.[13] Along with these repetitious arguments, Plaintiff includes a passing assertion that seemingly relates to the three-year limitations period provided in Defendant's Policy. The Court will address Plaintiff's limitations theory in Part III.C.3, *infra*.

Plaintiff presents two new arguments to support her contention that the administrative record should be stricken in its entirety. First, Plaintiff alleges that Defendant "committed VIOLATIONS with respect to birth date privacy" because it included the month and year of her birth on page BostonMut_Schulte_01019. (ECF No. 57 at 13.) Second, Plaintiff accuses Defendant of committing "VIOLATIONS with respect to the names of minor children"

---

[13] Plaintiff resurrects her protest that Defendant's lengthy paper exhibit (Exhibit 1-B to Defendant's Motion for Summary Judgment, *i.e.*, the administrative record) was not timely filed. The Court previously rejected that argument, finding that Plaintiff was not prejudiced by Defendant's adherence to the Court's electronic filing procedures. (ECF No. 53 at 3.)

Plaintiff also carries on at some length about her belief that Defendant's Motion for Summary Judgment constitutes a "pleading" and that a motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure is therefore appropriate. Plaintiff fundamentally misunderstands Rule 12(f); more importantly, however, Plaintiff has proffered no persuasive reason to strike Defendant's Motion.

Plaintiff repeats her calls for discovery and a jury trial along with her scurrilous accusations against judicial officers and employees of the Court. These matters have been thoroughly addressed in prior Orders and require no further elaboration. (*See* ECF Nos. 53, 62, 69.)

One issue that Plaintiff only references in passing in her "Objection" but that she raises again in her cross-motion is her belief that the copy of Policy No. G-50353, appended to Defendant's Motion for Summary Judgment as Exhibit 1-A, is not a true and correct copy because it excludes certain amendments. In its August 5, 2015, Order, the Court invited Plaintiff to introduce evidence of the allegedly excluded amendments. She has failed to do so throughout her briefing, and so the issue is moot. *Cf. Beasley v. Unum Life Ins. Co.*, No. 13-CV-12349, 2015 WL 4966875, at *3 (E.D. Mich. Aug. 20, 2015) (where original disability policy was lost but where plaintiffs failed to produce any evidence tending to show that provisions of defendant's specimen policy did not apply to them, court relied on specimen policy in resolving parties' dispute).

identified on pages BostonMut_Schulte_01047, 01137 & 01242.  (*Id.* at 13-14.)[14]  To support

both arguments, Plaintiff cites the redaction rules in this District's *Electronic Filing*

*Requirements and Procedures for Civil Cases (CM/ECF Version 5.0)* pt. IV.A (2011),

http://www.mdd.uscourts.gov/publications/forms/Civil%20Manual%20FINAL.pdf.[15]

It is unclear why Plaintiff purports to rely on the *Electronic Filing Requirements*.

Defendant did not file the administrative record electronically; rather, it submitted the record as a

lengthy paper exhibit.  The more pertinent privacy rule here is Rule 5.2 of the Federal Rules of

Civil Procedure, which provides that parties must generally redact dates of birth and the full

names of minor children.  Importantly, the redaction rule does not apply to certain classes of

exhibits, including "the official record of a state-court proceeding."  Fed. R. Civ. P. 5.2(b)(3).

All of the pages in question here were copied from the electronic docket of the Maryland

Judiciary.  Such copies likely fit within the exception for state-court records, and in any event,

they are already in the public domain.  Moreover, out of an abundance of caution, Defendant

promptly submitted redacted pages in response to Plaintiff's "Objection."  (*See* ECF No. 58.)

Given Defendant's diligent, good faith response, the Court certainly sees no reason to impose a

sanction—particularly the extreme and untenable sanction that Plaintiff has proposed (*i.e.*,

striking the entire record).

Because Plaintiff's "Objection to Orders" is meritless, the Court denies the relief sought

in ECF No. 57.

---

[14] Plaintiff also asserts that full Social Security numbers appear in the record, though she does not identify (1) whose numbers are included or (2) the page(s) on which the numbers appear.  The Court will not troll the 1430-page administrative record in search of a violation; if Plaintiff has a concern, she must present it in sufficient detail.

[15] Plaintiff cites the 2011 edition of the *Electronic Filing Requirements*; in fact, that edition was superseded in 2013. However, the 2013 edition did not materially update Part IV.A, so Plaintiff's error is not significant.

### B. *Plaintiff's Amended Cross-Motion (ECF No. 67)*

On October 5, 2015, Plaintiff filed a paper that purports to be both a reply in support of her cross-motion for summary judgment and an amendment to that cross-motion. (ECF No. 67.) Perhaps anticipating Defendant's resistance to her untimely amendment, Plaintiff states that her original cross-motion was "modified, encrypted, deleted and unrecoverable on the day it was scheduled to be delivered to the court, so Plaintiff filed exhibits with a handwritten title on a previous document's first page to preserving [*sic*] the filing date until the amendment could be provided." (*Id.* at 1 n.1.)[16]

Plaintiff grossly misapprehends the rules of procedure in this Court. When the Court establishes filing deadlines, the parties must thereafter comply with those deadlines unless, upon good cause shown, the Court grants leave to file out of time. *See Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) ("Indeed, a judge's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded . . . without peril.'" (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)); *see also Balimunkwe v. Bank of Am.*, No. 1:14-cv-327, 2015 WL 5167632, at *3 (S.D. Ohio Sept. 3, 2015) (striking plaintiff's amended motion for summary judgment where plaintiff neither sought leave to file such amended motion nor showed good cause for filing it and where defendants, who had already filed memoranda in opposition to original motion, would have been prejudiced thereby); *Am. Ass'n of Blood Banks v. Bos. Paternity, LLC*, Civ. No. DKC-2008-2046, 2009 WL 2366175, at *12 (D. Md. July 28, 2009) (declining to consider arguments raised in untimely supplemental brief).

---

[16] The content of the original cross-motion duplicates portions of Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment (ECF No. 52), which the Court previously denied (ECF No. 53).

In this case, pursuant to the February 2015 Scheduling Order, Plaintiff's cross-motion was due on July 6, 2015. (ECF No. 41 at 2.) The Court thereafter extended that deadline to August 13, 2015; the Court warned that this would be the *final* extension. (ECF No. 53 at 4-5.) When Plaintiff filed her cross-motion on August 13, she did not indicate that it was a "placeholder," nor did she seek leave of Court to depart yet again from the briefing schedule. Instead, she waited almost two months before filing what she now holds out as her true and complete cross-motion.

The Court appreciates that medical, technological, and other concerns sometimes inhibit compliance with deadlines. But if Plaintiff was truly unable, due to circumstances beyond her control, to file a thorough cross-motion on August 13, she should have promptly brought the matter to the Court's attention. The Court could have then considered Plaintiff's request and responded in the interest of justice, according Defendant whatever accommodations seemed appropriate in light of the relief (if any) granted to Plaintiff. If Plaintiff were permitted to amend her cross-motion at this late stage, Defendant would be unduly prejudiced: it has already submitted a twenty-one page brief in response to what it reasonably understood to be Plaintiff's cross-motion. The Court will not tolerate this kind of unwarranted prejudice, nor will it sanction Plaintiff's dilatory behavior.[17]

Thus, to the extent that Plaintiff seeks through her ECF No. 67 filing to amend her prior cross-motion, that request is denied: ECF No. 67 will instead be construed as Plaintiff's reply in support of her cross-motion. Moreover, because ECF No. 67 is a reply brief, the Court need not consider arguments that are raised therein for the first time. *See Clawson v. FedEx Ground*

---

[17] Plaintiff's most recent filing in this case, ECF No. 73 (a reply to Defendant's response in opposition to her purported amendment) illustrates the hazard and futility of permitting parties to file out of time. For the first time, Plaintiff asserts an argument in support of her demand for a jury trial based on principles of equitable estoppel. (*Id.* at 4.) Plaintiff's estoppel argument is meritless, but it highlights the feedback loop that forms when parties disregard the Court's well-conceived briefing schedule.

*Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered."); *see also United States v. White*, Crim. No. PWG-13-0436, 2014 WL 3898378, at *6 n.8 (D. Md. Aug. 7, 2014) ("The practice of including in a reply memorandum new arguments not previously raised is highly disfavored, because it deprives the adverse party of an opportunity to address the argument. Accordingly, many courts decline to consider them."). Nevertheless, because none of the arguments presented in ECF No. 67 would save Plaintiff's claim, the Court briefly addresses them below.[18]

### C. Cross-Motions on Plaintiff's ERISA Claim

Having disposed of Plaintiff's extraneous filings, the Court now considers the substantive questions raised by the cross-motions for summary judgment: *i.e.*, whether there is a genuine factual dispute relating to Defendant's termination of Plaintiff's LTD benefits and whether either party is entitled to judgment as a matter of law. Having carefully reviewed the record and the relevant authorities, the Court concludes that Plaintiff has not adduced sufficient evidence that she is entitled to continuing benefits under the LTD Policy; consequently, the Court will grant summary judgment to Defendant.

#### 1. Standard and Scope of Review

The Court turns first to the proper standard for judicial review of an administrator's decision to deny or terminate benefits under a plan regulated by ERISA. "In the ERISA context, courts conduct *de novo* review of an administrator's denial of benefits unless the plan grants the

---

[18] The Court does not, however, consider Plaintiff's new contentions—raised for the first time in ECF No. 67—that Defendant violated 29 U.S.C. § 1140 (ERISA's interference provision), 29 U.S.C. § 1141 (ERISA's coercive interference provision), and 29 U.S.C. § 1104 (ERISA's fiduciary duties provision). Per the Court's Order of September 30, 2014 (ECF No. 24), this action is limited to a single claim for benefits under section 502(a)(1)(B) of ERISA. If Plaintiff wished to plead additional counts, she should have sought leave to amend her Complaint.

The Court also notes that Plaintiff appended portions of ECF No. 64 (Motion to Extend Time) and ECF No. 65 (Motion for Jury Trial) to her ECF No. 67 submission. The Court previously disposed of those motions (ECF Nos. 66, 69), and it does not revisit them here.

administrator discretion to determine a claimant's eligibility for benefits, in which case the administrator's decision is reviewed for abuse of discretion." *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 165 (4th Cir. 2013) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).   In this case, Defendant admits that the LTD Policy "does not confer discretionary authority on Boston Mutual to make benefits-eligibility determinations or to construe the terms of the Policy."  (ECF No. 42–1 at 17.)   The Court agrees with Defendant's interpretation, and so it proceeds with a *de novo* review of Defendant's decision to terminate Plaintiff's LTD benefits.

Although the Court reviews Defendant's decision *de novo*, in so doing it confines the scope of its review to the evidence contained within the administrative record.   *See Donnell v. Metro. Life Ins. Co.*, 165 F. App'x 288, 297 (4th Cir. 2006) ("[E]ven in ERISA actions in which courts review the administrator's decision *de novo*, introduction of evidence outside the administrative record is permitted only in exceptional circumstances."); *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993) (en banc) ("[W]e continue to believe that the purposes of ERISA . . . warrant significant restraints on the district court's ability to allow evidence beyond what was presented to the administrator. . . . [W]e adopt a scope of review that permits the district court in its discretion to allow evidence that was not before the plan administrator.   The district court should exercise that discretion, however, *only when circumstances clearly establish that additional evidence is necessary* to conduct an adequate *de novo* review of the benefit decision." (emphasis added)).   As the *Quesinberry* court explained, in determining whether to expand the scope of review beyond the four corners of the administrative record, courts must ascertain why the evidence proffered was not initially submitted to the administrator.   "If the administrative procedures do not allow for or permit the introduction of

the evidence, then its admission may be warranted. In contrast, if the evidence is cumulative of what was presented to the plan administrator, or is simply better evidence than the claimant mustered for the claim review, then its admission is not necessary." *Id.* at 1027.[19]

### 2. *Plaintiff Has Not Carried Her Burden of Proof*

Section VI.F.2 of the LTD Policy provides that a claimant must not only supply proof of disability upon initial application for benefits but must also, upon Defendant's request, supply proof of *continued* disability and regular attendance by a physician. (ECF No. 42–3 at 31.) "Courts have held that policy language requiring an insured to submit 'proof of continued disability' shifts the burden of proof to the insured." *Cossio v. Life Ins. Co. of N. Am.*, 240 F. Supp. 2d 388, 392 n.2 (D. Md. 2002); *see also Band v. Paul Revere Life Ins. Co.*, 14 F. App'x 210, 212 (4th Cir. 2001) (per curiam) ("The burden is on an insurance beneficiary to prove his or her total disability benefits under a Plan."). In other words, it is not Defendant's responsibility to adduce evidence that Plaintiff is *not* disabled within the meaning of the LTD Policy; it is rather Plaintiff's obligation to prove that she *is* disabled. *See Realmuto v. Life Ins. Co. of N. Am.*, Civ. No. GLR-14-1386, 2015 WL 4528182, at *4 (D. Md. July 24, 2015) ("Contrary to [claimant's] supposition that [insurer] carries the burden of convincing the Court that there was a dramatic change in his condition, it is [claimant] that carries the burden of submitting enough objectively sufficient evidence that he is currently disabled as defined by the Plan.").

The LTD Policy also specifies the nature of the proof that a claimant is required to provide. Section VI.F.2 stipulates that proof must cover (1) the date disability started, (2) the

---

[19] In this case, Plaintiff submitted a 127-page exhibit along with her cross-motion for summary judgment: the exhibit contains an assortment of records and documents dating back to the 1980s. Many of these documents do appear in the administrative record, but some do not. Plaintiff has proffered no explanation whatsoever for her failure to supply Defendant with all pertinent documents during the administrative review process. These are not the exceptional circumstances contemplated in *Quesinberry v. Life Insurance Co. of North America*, 987 F.2d 1017, 1025 (4th Cir. 1993) (en banc) and progeny, and so the Court limits the scope of its review to the evidence included in the administrative record.

cause of disability, and (3) the degree of disability. (ECF No. 42–3 at 31.) Section II, the Policy's glossary, defines "total disability" as being "unable to perform with reasonable continuity each and every of the material and substantial duties of [one's] own or any other occupation for which [one] is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity." (*Id.* at 12.) Thus, taking the Policy as a whole,[20] Plaintiff was required to provide evidence not only that she suffers from ongoing health problems but also, more particularly, that those problems preclude her from doing any job for which she is reasonably qualified.

Plaintiff fell far short of her evidentiary burden. For a period of almost seven months— from September 2009, when Defendant initially requested proof of continuing disability, through April 2010, when Defendant closed Plaintiff's claim—Plaintiff stubbornly refused to supply any medical records whatsoever; she likewise refused to sign an authorization that would have enabled Defendant to obtain the records at its own expense. (BostonMut_Schulte_00895.) Then, in October 2010—more than a year after Defendant's initial request—Plaintiff faxed Defendant a blurry hodgepodge of documents, several of which were outdated or irrelevant to her ERISA LTD claim.[21] Even those documents that seem relevant present at best an unclear picture of the state of Plaintiff's health[22]—and they lend no insight into her ability (or lack

---

[20] "'ERISA plans, like contracts, are to be construed as a whole.' Courts must look at the ERISA plan as a whole and determine [a] provision's meaning in the context of the entire agreement." *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 820 (4th Cir. 2013) (quoting *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 93 (3d Cir. 1992)).

[21] For example, Plaintiff included a July 2004 memo from Defendant's Medical Director (BostonMut_Schulte_00838) and a June 2007 letter from Dr. Paul C. McAfee, M.D. (*id.* at 00844). Plaintiff also included documents purporting to show that she receives certain governmental disability benefits, including Social Security Disability Insurance. (*Id.* at 00845-46.) However, the mere fact that certain agencies have, per their own regulations and procedures, deemed Plaintiff disabled, does not establish that Plaintiff is disabled within the meaning of Defendant's Policy. *See Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 275 (4th Cir. 2002) ("There is no indication . . . that the definition of 'total disability' under the Plan in any way mirrors the relevant definition under the regulations of the Social Security Administration.").

[22] Several of Plaintiff's documents do indicate that she suffers from continuing orthopedic problems. An undated document signed by Dr. Loralie Ma, M.D., describes "[f]ocal myelomalacic changes in the upper cervical cord at the C2 level" and "[s]pondylotic change at multiple levels slightly increasing since the prior examination from 2005."

thereof) to perform the material and substantial duties of an occupation for which she is reasonably qualified.[23]  Indeed, the *only* evidence in the record tending to show Plaintiff's vocational abilities at or around the time of the administrative review is the report by Dr. Mark Rosenthal, the orthopedic surgeon who conducted Plaintiff's December 2010 evaluation.  And Dr. Rosenthal opined that "[f]rom an orthopaedic perspective, there is no reason why [Plaintiff] could not return to work in at least a sedentary position."  (*Id.* at 00746.)  Dr. Rosenthal reached this assessment after studying Plaintiff's medical records and observing her actions in his office: as he noted, she was able to "get into and out of a chair, on to and off of the examination table . . . [and] chase [him] down the hall."  (*Id.*)

Plaintiff argues in her cross-motion (and throughout her papers) that Defendant cannot require her to "complete forms after she was initially determined to be disabled."  (ECF No. 54

---

(BostonMut_Schulte_00839.)  A September 2010 report by Dr. Howard Moses, M.D., states that Plaintiff "has the neurological residue of a C2 and C3–4 myelopathy with resulting paraparesis which is disabling," along with "many other syndromes including pain."  (*Id.* at 00842.)  And a report by Dr. Moses with an unreadable date describes "markedly reduced" cervical motion and electromyographic findings compatible with a mild left L5 lesion.  (*Id.* at 00840.)  But that same document reports no electrical evidence of either a cervical radiculopathy or a peripheral polyneuropathy.  (*Id.*)  And a May 2010 report by Dr. Ma recounts a "very mild" bulge at L1–2, a "very minimal spondylotic change" at L2–3, and a conus within "normal limits."  (*Id.* at 00841.)

If Plaintiff's burden in this case were merely to demonstrate that she has lingering medical problems, the evidence she has adduced, though minimal, would probably satisfy that burden.  But as discussed above, Plaintiff's burden is to show that she is disabled *within the meaning of Defendant's Policy*.  That means showing, *inter alia*, that she is "unable to perform with reasonable continuity each and every of the material and substantial duties" of her occupation or some other occupation for which she is reasonably fitted.  (ECF No. 42–3 at 12.)  Plaintiff's documents are not responsive to this issue:  they do not address, for example, her ability to sit, stand, or ambulate; her ability to concentrate; how she handles social or stressful situations; whether she could do light work, sedentary work, or no work at all.  Indeed, based on the evidence Plaintiff has adduced, the Court can only speculate about the extent of her vocational abilities at this time.  Plaintiff cannot survive summary judgment on speculation alone.  *See Gallagher*, 305 F.3d at 274-75 (claimant who had indisputably endured "significant pain and discomfort for over two decades" did not prove that he was totally disabled because he did not submit "objectively satisfactory evidence that he was unable to perform each and every material duty of his occupation"); *Cossio v. Life Ins. Co. of N. Am.*, 240 F. Supp. 2d 388, 393 (D. Md. 2002) (claimant who initially qualified for LTD benefits did not submit objectively satisfactory evidence of continuing disability where her primary treating physicians supplied no current reports indicating that she was disabled and did not dispute that she was capable of performing light duty work); *see also Lucy v. Macsteel Serv. Ctr. Short Term Disability*, 107 F. App'x 318, 321 (4th Cir. 2004) (per curiam) (claimant failed to prove that he was totally disabled "as defined by the plan" where purported evidence comprised brief, conclusory assertions by treating physicians, where there was no indication that one such physician had even consulted plan's definition of disability, and where claimant's condition began improving after a surgery).

[23] It is also unclear from Plaintiff's *de minimis* documentation whether, in the wake of Dr. Ro's retirement, she was under the regular care of a physician, a separate requirement of the LTD Policy.  (*See* ECF No. 42–3 at 31.)

at 5.) It is true that the LTD Policy does not require Plaintiff to complete a *particular* form or to submit a *particular* type of medical evidence[24]—but that does not release Plaintiff from her burden to *prove* her continuing disability. She could have done so, as Defendant repeatedly advised her, by submitting appropriate and relevant documentation or by signing a release so that Defendant could investigate her claim at its own expense. She had ample opportunity over a period of many months to comply with the terms of the Policy; having failed to do so, she must now accept the financial consequences of her noncompliance.[25]

Because the evidence in the administrative record does not demonstrate that Plaintiff is currently disabled within the meaning of Defendant's Policy, the Court must grant summary judgment to Defendant on Plaintiff's ERISA benefits claim.

### 3. *Plaintiff's Complaint Is Time-Barred*

Even had the Court determined through its review of the administrative record that Plaintiff *is* disabled within the meaning of Defendant's Policy, the Court would still grant summary judgment to Defendant because Plaintiff's Complaint was untimely. The LTD Policy provides that a claimant "cannot start any legal action . . . more than 3 years after the time proof of claim is required." (ECF No. 42–3 at 31.) In this case, the limitations period would have commenced no later than April 19, 2010, when Defendant closed Plaintiff's claim for failure to

---

[24] The Court is mindful that it cannot impose on Plaintiff a requirement that she supply a *particular* type of medical evidence not specifically required by the Policy. *See Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 171 (4th Cir. 2013) (where claimant supplied physicians' statements addressing her symptoms of fatigue and pain and her consequent inability to work but did not provide objective evidence of a physical limitation, and where policy did not specifically require such objective evidence, "district court erred in concluding that [insurer] could deny [claimant's] . . . claims on the basis that her proof lacked such objective evidence"). But nothing in the *Cosey* opinion relieves Plaintiff of her fundamental burden to prove, one way or another, that she is disabled within the meaning of Defendant's Policy. It may be that some combination of medical records and physicians' statements directed toward Plaintiff's vocational abilities could have satisfied that burden. But the documents Plaintiff provided, which say nothing about her vocational abilities, are insufficient—especially when read alongside Dr. Rosenthal's observations.

[25] The Court has reviewed the memorandum Plaintiff attached to her cross-motion, recounting her past and present health problems. (ECF No. 54–1 at 1-3.) However, the Court cannot consider the contents of that memorandum as proof of Plaintiff's claim because (1) it is not part of the administrative record and (2) it is not in the nature of admissible evidence, *i.e.*, it is neither an affidavit nor a declaration subject to the penalty for perjury.

provide sufficient proof of ongoing disability (BostonMut_Schulte_00895).[26]  Plaintiff should have filed her Complaint on or before April 19, 2013; instead, she filed it on February 11, 2014, almost a year out of time.  (*See* ECF No. 1.)

Plaintiff does not address the contractual limitations issue in her cross-motion.  However, in her "Objection" to the Court's August 5, 2015, Order, Plaintiff contends that "[t]he time to plead has past [*sic*] the Defendants . . . cannot plead a defense . . . and THIS PLAINTIFF IS NOT BARRED by the statues [*sic*] of limitations:  she timely filed her document.  The reverse is the Defendants are Barred [*sic*] by the statues [*sic*] of limitations."  (ECF No. 57 at 6.)  Plaintiff develops this contention in her reply in support of her cross-motion, arguing that her Complaint was timely because she filed it within three years of a letter from DMS dated March 3, 2011. (ECF No. 67 at 3.)[27]  Plaintiff also asserts that the LTD Policy's limitations provision is "not legal" because "it conflicts with 29 USC 1113 [*sic*]."  (*Id.* at 2 n.2.)

As for Plaintiff's statement that the "time to plead has past [*sic*]," the Court assumes Plaintiff is referring to Defendant's presentation of the limitations defense in its Motion for Summary Judgment.  It is true that Defendant did not raise that defense in its Answer, and it is also true that, pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, a party must ordinarily present its affirmative defenses at the pleading stage.  However, there is "ample authority in this Circuit for the proposition that absent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion."  *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999) (collecting cases), *overruled on other grounds as recognized in Inman v. Klockner Pentaplast of Am., Inc.*,

---

[26] The limitations period likely started running even earlier—on December 14, 2009, when Defendant cited the LTD Policy's proof requirements in a letter to Plaintiff (BostonMut_Schulte_00955).
[27] That letter was one of several through which DMS attempted to secure from Plaintiff the disk that she had indicated she wished to submit.  DMS never received the disk.  (*Id.* at 00699.)

347 F. App'x 955, 961 (4th Cir. 2009) (per curiam); *see also Grunley Walsh U.S., LLC v. Raap*, 386 F. App'x 455, 459 (4th Cir. 2010) ("Courts have found that affirmative defenses raised for the first time in summary judgment motions may provide the required notice.").  Plaintiff has made no showing that she was prejudiced by the inclusion of the affirmative defense in Defendant's Motion, and the Court cannot fathom how she could have been prejudiced—given that the defense relates to a provision written in plain English in a document to which Plaintiff had access.[28]

As for Plaintiff's assertion that her Complaint was timely because she filed it within three years of the March 2011 letter, Plaintiff has simply misread the limitations provision.  The limitations period begins running at the time that "proof of claim is required."  In this case, proof of claim was plainly required at or before the time Plaintiff's claim was closed due to her failure to provide such proof.  That closure occurred in April 2010, almost four years before Plaintiff filed her untimely Complaint.

---

[28] In a footnote to her reply brief, Plaintiff avers that Defendant "had a habit of stopping payments and then recontinuing them" and that she "expected [Defendant] to continue the payments again."  (ECF No. 67 at 3.)  Plaintiff's purported expectation, however, is belied by Defendant's unwavering insistence that Plaintiff supply proof of claim.  During both the initial administrative review and the subsequent appeal, Defendant (along with its agent, DMS) repeatedly implored Plaintiff to supply the requisite documentation or to sign appropriate waivers— and Defendant likewise warned Plaintiff that noncompliance would result in termination of benefits.  Indeed, in the very letter in which Defendant acknowledged Plaintiff's appeal and released the benefits that would have accrued between March and October 2010, Defendant stressed that future payments were contingent on Plaintiff providing it with any additional information that it required, and Defendant further declared that payment of benefits "should not be construed as an admission of liability by [Defendant] or as a waiver of [its] right to get additional medical or other information."  (BostonMut_Schulte_00832.)  Beginning in 2009, when Defendant alerted Plaintiff to the Policy's proof provision, and throughout its dealings with her, Defendant never surrendered its right to enforce the Policy as written, and nothing in its benevolent conduct can or should be construed as a waiver.

For that matter, common law doctrines of waiver and estoppel generally have no bearing in the ERISA context.  *See Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 238 (4th Cir. 2008) ("ERISA . . . does not incorporate the principles of waiver and estoppel."); *Band v. Paul Revere Life Ins. Co.*, 14 F. App'x 210, 213 (4th Cir. 2001) (per curiam) ("[I]t is well settled in this Circuit that principles of waiver and estoppel cannot be used to modify the express terms of an ERISA plan."); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 56 (4th Cir. 1992) ("While a court should be hesitant to depart from the written terms of a contract under any circumstances, it is particularly inappropriate in a case involving ERISA, which places great emphasis upon adherence to the written provisions in an employee benefit plan.").  Courts have more recently recognized that estoppel and other equitable remedies may be available in actions prosecuted under section 502(a)(3), *see McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 183 (4th Cir. 2012), but that narrow exception is not relevant here.

As for Plaintiff's contention that the limitations period is "not legal" because it is shorter than the periods prescribed in section 413 of ERISA, 29 U.S.C. § 1113, that contention fails because section 413 is inapposite to Plaintiff's claim. Section 413 governs actions for breach of fiduciary duty, which may be brought under section 502(a)(3)—but Plaintiff's sole claim in this action is for benefits under section 502(a)(1)(B).[29] "ERISA does not . . . specify a statute of limitations for filing suit under § 502(a)(1)(B)." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 608 (2013). The *Heimeshoff* Court held that contractual limitations provisions in policies governed by ERISA are enforceable, even where the limitations periods that they prescribe are triggered before the administrative process has run its course.[30]

Because the three-year limitations period provided in the LTD Policy is enforceable, and because Plaintiff filed her Complaint well outside that period, Plaintiff's claim for ERISA benefits is time-barred—and the Court must therefore grant summary judgment to Defendant.

## IV. Conclusion

Through her copious briefs, memoranda, and procedurally anomalous filings in this case, Plaintiff has presented a host of contentions—many of them duplicative, most unsupported by citations to admissible evidence or legal authority. Some of Plaintiff's contentions are truly baffling; others, scurrilous.[31] But even a generous read of Plaintiff's papers leads to the

---

[29] Moreover, had Plaintiff pleaded a count for breach of fiduciary duty, the Court might well have dismissed it as improper. *See Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 107 (4th Cir. 2006) (joining the majority of circuits in holding that a claimant whose injury may be adequately redressed through a claim for benefits under section 502(a)(1)(B) may not proceed with a claim for breach of fiduciary duty under section 502(a)(3)).

[30] The *Heimeshoff* Court recognized that contractual limitations provisions are unenforceable where they are unreasonably short or foreclosed by ERISA. But neither of those exceptions applies here: in fact, the limitations provision in this case is materially identical to the provision that the *Heimeshoff* Court deemed enforceable (*i.e.*, a bar on legal proceedings that commence more than three years after proof of loss is required). 134 S. Ct. 604, 609 (2013).

[31] Given the indecorous tone of Plaintiff's papers and her apparent worries (perhaps best captured by her ECF No. 56 "Motion and memorandum to STOP THE HARASSMENT"), it strikes the Court that Plaintiff may be confronting other, nonorthopedic health issues. While the Court is certainly sympathetic to such possible challenges, and while the Court recognizes that such challenges can be disabling in and of themselves, the Court cannot factor its perception of Plaintiff's mental state into its review of her LTD claim: there is nothing in the

inexorable conclusion that she has failed to make out a genuine dispute of material fact concerning her claim for LTD benefits. And even had she made out such a dispute, her claim would still fail: it is time-barred. Consequently, an Order shall enter DENYING the relief requested in Plaintiff's "Objection to Orders" (ECF No. 57); DENYING Plaintiff's proffered amendments to her "Counter-Motion for Summary Judgment" (ECF No. 67); DENYING Plaintiff's "Counter-Motion for Summary Judgment" (ECF No. 54); and GRANTING Defendant's Motion for Summary Judgment (ECF No. 42).

DATED this 18th day of November, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge

---

administrative record tending to show that Plaintiff has been diagnosed or treated in relation to these other issues, nor even that she has raised these issues in her extended dealings with Defendant.